IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 97-31264

---

RAMIRO REYES; FLORENTINO MARTINEZ; ELIZABETH MARTINEZ

Plaintiffs-Appellees,

v.

CARL SAZAN, ETC.; ET AL

Defendants

CARL SAZAN, Trooper, Louisiana State Police; WILLIAM WHITTINGTON, Colonel, Louisiana State Police; L M RYAN, Captain, Louisiana State Police; KEVIN ARMSTRONG, Captain, Louisiana State Police

Defendants-Appellants

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

February 17, 1999

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This lawsuit alleges that various officials violated the plaintiffs' constitutional rights by conspiring to enforce selectively the traffic laws and damaging a pickup truck in a fruitless search for contraband. We conclude the district court abused its discretion by not requiring a Rule 7 reply to the defense of qualified immunity. We also conclude that the Eleventh Amendment is not a bar to the state law claims.

I

As we must, we assume the plaintiffs' story:  Florentino and Elizabeth Martinez, brother and sister, were driving with Elizabeth's minor daughter in Ramiro Reyes's pickup truck on Interstate 12 in St. Tammany Parish, Louisiana, en route to Alabama.  The truck had Texas plates.

When they passed a marked Louisiana State Police vehicle, Carl Sazan, a Louisiana State Trooper, pulled them over.  They were driving under the speed limit.  At Sazan's request, Florentino got out of the truck, producing his driver's license and proof of registration.  Sazan ordered Florentino to remain standing in the cold rain while he returned to his vehicle, presumably to verify that the truck was not stolen.  Sazan issued a warning citation for following too closely, although there had been no vehicle ahead. Florentino denied that there were any drugs or weapons in the truck but signed a consent-to-search form at Sazan's request.

Sazan then ordered Elizabeth to leave the pickup truck and stand in the rain with her child while he searched it.  Sazan refused to allow Elizabeth to retrieve a jacket for her daughter. Another trooper, a John Doe defendant, subsequently arrived with a police dog.  The dog searched inside and under the truck, but barked only when Doe pulled the dog's chain.

Although no drugs were found, Sazan ordered the Martinezes to follow him to Troop L Headquarters in Mandeville, Louisiana, where Kevin Armstrong was the commanding officer.  Sazan, Doe, and another unidentified officer, now Richard Roe, searched the vehicle.

It is asserted that the search at the station exceeded the permission given the officer; that it was conducted negligently and maliciously; and that the police removed the gas tank and placed the truck on a lift that slammed it to the ground. The search lasted for three to four hours. It cost $2,209.20 to repair the damage done to the truck by the search.

During the search at the station house, Florentino, Elizabeth, and the minor were forced to stand under an outside porch cover exposed to the weather. Roe left the shop during the search, stating that drugs had been found and that the adults would be put in jail, and the child placed in foster care. In fact, no drugs or other contraband were found, and no criminal charges were ever filed.

The plaintiffs sued Sazan, the arresting officer, and the supervisory officers, Whittington, Ryan, and Armstrong, under §§ 1983 and 1985(3) for denial of their constitutional rights. They also asserted claims under the Louisiana Constitution and the Louisiana Civil Code. The Martinezes claimed general and special damages of $55,000 each for their discomfort, embarrassment, humiliation, loss of dignity, and loss of privacy. Reyes sought $2,209.20 for the damage to his truck, plus $5,000 in punitive damages.

Defendants moved to dismiss, alleging that they could not be held liable under § 1983 for monetary damages and that Reyes had no claim under § 1983 or § 1985(3) because he was not in the car. In addition, Armstrong and codefendants L.M. Ryan and Colonel William

Whittington, police officials assertedly members of the conspiracy, maintained that the plaintiffs cannot show that they were liable in a supervisory capacity and failed to overcome their defense of qualified immunity. Sazan specifically argued that the Martinezes failed to allege facts sufficient to defeat the defense of qualified immunity. All defendants meanwhile argued that the § 1985(3) claim failed to state a claim and was insufficient to overcome the defense of qualified immunity. Finally, defendants pressed both the bar of the Eleventh Amendment to the state law claims, and its contention that the state claims did not meet the jurisdictional amount requirements of diversity jurisdiction.

The plaintiffs replied that their suits were against the defendants in their individual capacities and that these defendants were not entitled to qualified immunity. They explained that Whittington had responsibility for guiding the discretion of officers and for disciplining them, that Ryan and Armstrong had similar authority over Sazan, and that all three conspired with Sazan to enforce traffic laws selectively against Hispanics and out-of-state residents.

While the district court agreed that Reyes could not maintain his claims under §§ 1983 and 1985(3), it denied the motion to dismiss in other respects. It also decided that it had supplemental jurisdiction over plaintiffs' state law claims. The supervisory defendants, Whittington, Ryan, and Armstrong, here challenge only the denial of their motion to dismiss and the denial of the Eleventh Amendment defense to the state law claims.

4

The complaint alleges specific facts detailing plaintiffs' personal experience with Sazan. It offers no similar detail for the claim that defendants Whittington, Ryan, and Armstrong conspired to deny them and other Hispanic drivers their civil rights. The district court concluded that the plaintiffs had "plead with particularity that this was part of a policy to stop and search those of Hispanic origin and/or that the supervisors failed to adequately train and/or monitor the Troopers." The court did not dismiss the suit, suggesting that it would grant summary judgment to the supervisors absent evidence raising a genuine issue of material fact. As we will explain, we do not agree that the claim was plead with particularity against the supervisory officers, and we conclude that the district court moved too quickly.

Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under Federal Rule of Civil Procedure 7(a) to qualified immunity defenses. See Schultea v. Wood, 47 F.3d 1427, 1430, 1432 (5th Cir. 1995) (en banc). The Schultea court held that "the [district] court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." Id. at 1433-44. The district court need not allow any discovery at this point unless the "plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine

issue as to the illegality of defendant's conduct at the time of the alleged acts." Id. at 1434.

Plaintiffs did not allege their claims against the supervisory defendants with particularity. Their pleading was little more than a bare conclusion, and the district court erred in finding the complaint to be sufficient. Rather, it should first have ordered a reply, and if the required detail was not forthcoming, dismiss the complaint. The Schultea rule governing the Rule 7(a) reply is an instantiation of the more general principle that "heightened pleading" is needed in qualified immunity cases. See id. at 1430. Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury. See Wicks v. Mississippi State Employment Servs., 41 F.3d 991, 995 (5th Cir. 1995).

The district court abused its discretion in failing to require a Rule 7 reply. As the Schultea court made clear, "Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist." Id. at 1434.

The Supreme Court since Schultea has attempted to clarify the the jurisdiction of the courts of appeal to review a denial of qualified immunity. At present, the rule of jurisdiction comes to this: Legal conclusions are immediately appealable, but not the sufficiency of the evidence to support the denial. See Behrens v. Pelletier, 516 U.S. 299, 313 (1996); Johnson v. Jones, 515 U.S. 304, 313 (1995). The appellate court can consider the materiality

6

of disputed issues of fact, but not contentions that there are factual disputes.  See Colston v. Barnhart, 146 F.3d 282, 284 (5th Cir. 1998).

The Supreme Court's refinement of qualified immunity jurisdiction has only made the more important Schultea's emphasis upon the reply as a tool of the trial court insisting on particularity in pleading.  Indeed, the Court's vigorous adherence to the distinction between fact and law--or genuine issues and material issues--underscores the strength of the Schultea approach. Whether the complaint is insufficiently particular, and thus a reply to the defense of qualified immunity is needed, is a question of law.  Similarly, we can examine afresh whether a reply is "tailored to the assertion of qualified immunity and fairly engage[s] its allegations," Schultea, 47 F.3d at 1433, a look that does not require reviewing the record to determine if the reply's factual assertions are true.

III

We also have jurisdiction over the appeal of the denial of Eleventh Amendment immunity on the state law claims.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993).  Such appeals are within the collateral order doctrine's ambit because the denial of immunity "'[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment.'" Id. at 144 (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468

7

(1978)) (alterations adding numbers in original). "[T]he value to the States of their Eleventh Amendment immunity, like the benefit conferred by qualified immunity to individual officials, is for the most part lost as litigation proceeds past motion practice." Id. at 145.[1]

The defendants' Eleventh Amendment defense to the state law claims arises from the Supreme Court's decision in Pennsylvania State School and Hospital v. Halderman, 465 U.S. 89 (1984). The Court held that the fiction of Ex parte Young, 209 U.S. 123 (1908), will not save efforts to enforce prospectively state law against state officials and that the Eleventh Amendment is a bar, if it is otherwise applicable. But the Eleventh Amendment is not otherwise applicable here because the officers are sued personally, and plaintiffs have no need of the Young fiction. See id. at 101 ("'The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'") (quoting Hawaii v. Gordon, 373 U.S. 57, 58 (1963) (per curiam)); see also Hafer v. Melo, 502 U.S. 21 (1991).

---

[1]In Woods v. Smith, 60 F.3d 1161, 1167 (5th Cir. 1996), the court concluded that it lacked jurisdiction to consider an interlocutory Eleventh Amendment defense, but only because it found "no such denial [of Eleventh Amendment immunity] here in the trial court's refusal to dismiss the state law claims." While the court did not elaborate on why it found no such denial, its language implies that the trial court had not considered the Eleventh Amendment issue. In this case, by contrast, the district court expressly considered and rejected the Eleventh Amendment defense, and this court thus has jurisdiction over the interlocutory appeal on Eleventh Amendment grounds. If the Eleventh Amendment does apply, we would need to reverse rather than remand for further pleading.

Our question then is whether a claim against these defendants individually will nonetheless run to the state treasury under Louisiana law. We treated the issue in <u>Hughes v. Savell</u>, 902 F.2d 376 (5th Cir. 1990).[2] In <u>Hughes</u>, the court reversed an award of damages against a Louisiana prison guard on a state law negligence claim, finding that claim barred by the Eleventh Amendment. Although the plaintiff in <u>Hughes</u> purported to sue the guard in his individual capacity, the court recited that the Amendment bars suits against state officials when "the state is the real, substantial party in interest." <u>Id.</u> at 377 (quoting <u>Ford Motor Co. v. Department of Treasury</u>, 323 U.S. 459, 464 (1945)). Construing Louisiana law, the court found that a prison guard could not be individually liable for such an attack, and that state prison employee negligence would be imputed to the state when liability was assigned. <u>See id.</u> at 379.

Applying <u>Hughes</u>, the question is whether the state officials here could be personally liable for the state law violations. The district court rejected the argument from <u>Hughes</u> on the basis that the "plaintiffs here assert no such claim," i.e. did not maintain that personal liability would be imputed to the employer. In the motion to dismiss, defendants requested only that the claims be dismissed "insofar as they are sued in their official capacities." They thus could be seen as not asserting that the state law

---

[2]The defendants do not challenge the federal claim on Eleventh Amendment grounds. <u>See</u> <u>Flowers v. Phelps</u>, 964 F.2d 400, 401 (5th Cir. 1992) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 237–38 (1974)) (finding no Eleventh Amendment bar to a § 1983 claim); <u>Hafer</u>, 502 U.S. at 29-31.

9

indemnifies them from personal liability. We read the defendants' reference to "official capacities" broadly as including suits against the defendants personally but indemnified by the state.

We find no bar. The Louisiana provisions sued upon are statutes of general applicability, not provisions specifically concerning conduct of government officers. See, e.g., La. Civ. Code art. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."). While Louisiana law offers indemnification of state employees in some circumstances, such indemnification extends only to an employee acting "within the scope of his office, employment, contract, or assignment and such damages did not result from the intentional wrongful act or gross negligence of the official, officer, or employee." La. Rev. Stat. § 13:5108.2(B).

Because there is at least a fact issue concerning whether the officers here acted intentionally or with gross negligence, the officials might not receive indemnification. Moreover, while we need not consider the issue here, other circuits have held that a state's decision to indemnify an officer does not turn the suit into one in the officer's official capacity. See Blaylock v. Schwinden, 862 F.2d 1352, 1354 (9th Cir. 1988); Wilson v. Beebe, 770 F.2d 878 (7th Cir. 1985) (en banc).

IV

We VACATE the district court's denial of qualified immunity to Whittington, Ryan, and Armstrong, and REMAND with instructions to require that the plaintiffs file a reply to the defense. We AFFIRM

10

the district court's ruling that the Eleventh Amendment affords no defense to the state law claims asserted against the officers personally.

VACATED and REMANDED in part; AFFIRMED in part.