**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2009

Charles R. Fulbruge III
Clerk

No. 06-41579

CHRISTY CARTY, Individually and as Next Friend for Bryce Carty, Justice
Carty and Maddy Carty, Minors and as Representative of the Estate of
Jimmy Carty Jr, Deceased

Plaintiff - Appellee

v.

COMMANDER ALBERT RODRIGUEZ; LIEUTENANT ERWIN BALLARTA

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:06-CV-138

Before DeMOSS, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiff Christy Carty brought suit individually, as next friend for her

children, and as the representative of her late husband's estate against

defendants Commander Albert Rodriguez ("Rodriguez") and Lieutenant Erwin

Ballarta ("Ballarta"), who are both officers of the Texas Department of Public

Safety ("DPS"). DPS is a law enforcement agency in the State of Texas.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Defendant Rodriguez is the Commander of the DPS Training Academy, and Defendant Ballarta is the Defense Tactics Coordinator for the DPS Training Academy. Defendants moved to dismiss the complaint on qualified immunity grounds, which the district court denied. *See Carty v. Tex. Dep't of Public Safety*, No. 2:06-CV-138, 2006 WL 3332589 (E.D. Tex. Oct. 6, 2006). For the reasons set forth below, we vacate the district court's order and remand for further proceedings.

1.

Plaintiff's late husband, Jimmy Carty, was a member of a training class for the Texas DPS, and enrolled in the DPS Training Academy in Austin, Texas. He was injured as part of the DPS training called the "active countermeasures drill" on May 19, 2005. He sustained head and brain injuries during this drill, and died as a result of his injuries on May 26, 2005.

Plaintiff brought this suit against the individual state actor defendants under 42 U.S.C. §§ 1983, 1985, and 1986.[1] Specifically, plaintiff claims defendants' actions in the active countermeasures drill led directly to the head injury and subsequent death of Jimmy Carty. This, she says, violated Jimmy Carty's constitutional right to bodily integrity and life guaranteed by the Fourteenth Amendment to the United States Constitution. Moreover, plaintiff contends that defendants knew of the high risks involved with the drill, and decided to turn a blind eye to those risks. Plaintiff further contends that because defendants knew of the risks involved, they had a duty under the Fourteenth Amendment to establish and implement policies, practices, and procedures designed to protect Jimmy Carty's substantive due process rights to bodily integrity and life.

---

[1] Plaintiff also asserted claims against DPS and two manufacturers of protective gear worn by Carty during the drill. The district court granted DPS's motion to dismiss on sovereign immunity grounds (a ruling not at issue in this appeal), and plaintiff has since reached a settlement with the protective gear manufacturers.

2

Defendants answered, denying plaintiff's factual allegations, asserting a defense of qualified immunity, and moving to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants also filed a motion requesting that the district court require plaintiff to file a reply under Rule 7(a) tailored to their assertions of qualified immunity. Plaintiff filed an amended complaint (styled as the "First Amended Complaint") and a response to defendants' Rule 7(a) motion, asserting that the first amended complaint met the pleading requirement of a Rule 7(a) reply under our court's decision in *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). Defendants objected that plaintiff's complaint did not adequately comply with the Rule 7(a) reply requirement. The district court did not address the defendants' Rule 7(a) motion for a reply. Instead, the district court denied defendants' motion to dismiss the complaint, finding that its factual allegations alleged that defendants violated Carty's clearly established constitutional rights. Defendants brought this interlocutory appeal from the district court's rulings.

2.

Federal Rule of Civil Procedure 8 sets forth the basic rules for pleading in federal courts. Under Rule 8, a plaintiff suing a public official under § 1983 must file a short and plain statement of his claim for relief, a statement that rests on more than conclusions alone. *See* Fed. R. Civ. P. 8(a); *Schultea*, 47 F.3d at 1433. "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, [under Rule 7(a)(7)], require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *Schultea*, 47 F.3d at 1434.

"Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist. The district court may ban discovery at this threshold pleading stage and may limit any necessary discovery to the defense of qualified immunity. The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts. Even if such limited discovery is allowed, at its end, the court can again determine whether the case can proceed and consider any motions for summary judgment under Rule 56." *Id.* "Faced with spare details of claimed wrongdoing by officials, trial courts ought routinely [to] require plaintiffs to file a reply under Federal Rule of Civil Procedure 7(a) to qualified immunity defenses." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

Subsequent to our en banc decision in *Schultea*, the Supreme Court in *Crawford-El v. Britton*, 523 U.S. 574 (1998), clarified an additional procedural aspect of the qualified immunity defense, concluding that the federal courts may not require that plaintiffs meet a heightened burden of proof to establish the mental state element (such as improper motive) of a § 1983 claim. *See id.* at 592-94. Rather, the plaintiff need only prove the defendant acted with the requisite mental state to the extent ordinarily required in a civil action, both at summary judgment and at trial. *See id.* at 600-01. The Supreme Court emphasized, however, that a trial court "must exercise its discretion in a way that protects the substance of the qualified immunity defense . . . so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Id.* at 597-98. To this end, trial courts should utilize existing case management procedures, such as requiring the filing of a Rule 7 reply or a more definite statement under Rule 12(e), pre-discovery dismissal, narrowly tailoring discovery, and summary judgment itself. *Id.* at 598-600. Thus, the Supreme Court tacitly recognized and approved the reply procedure we outlined in

4

*Schultea. See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1185, at 29-30 & n.7 (3d ed. 2004) (noting that the Supreme Court in *Crawford-El* "recognized" the practice of requiring the plaintiff to file a Rule 7(a) reply under *Schultea*).

3.

Applying the foregoing principles to the present case, we conclude that the district court exceeded its limited discretion in not addressing defendants' motion for an order requiring plaintiff to file a reply to their answer raising the defense of qualified immunity.  Because plaintiff's complaint attempts to state a conscience-shocking deliberate indifference substantive due process claim against defendants using mostly very general terms, there is a significant possibility that greater particular factual detail in a reply will assist defendants in testing plaintiff's claims.  *See* 5 Wright & Miller, *supra,* § 1185, at 33 (3d ed. 2004) ("In certain instances an additional pleading by the plaintiff may be helpful to the defendant in laying the groundwork for a motion to test the sufficiency of the claim or defense under Rules 12(b)(6) or 12(c) or to dispose of the entire litigation without a trial by seeking summary judgment under Rule 56.").

For example, plaintiff's amended complaint alleges that defendants were deliberately indifferent to Carty's constitutional rights because they developed and continued to use the active countermeasures drill despite having knowledge that it caused 121 prior "traumatic brain injuries" over the course of 28 years. The phrase "traumatic brain injury" describes a wide array of injuries -- with a corresponding range of severity. Whether these injuries involved only headaches or involved more severe injuries, such as amnesia or death, directly bears on defendants' state of mind.  Moreover, the complaint does not specifically allege when these injuries occurred, other than to allege that they occurred between 1978 and 2005.  Whether these injuries largely occurred near the drill's inception, near the time of Jimmy Carty's death, or were generally dispersed

throughout the drill's use may affect the deliberate indifference analysis. Additionally, the amended complaint does not describe whether or how defendants responded to these injuries. Certainly, whether defendants took any actions to guard against the risk of harm in light of these previous injuries speaks to their state of mind at the time of Carty's injury. Finally, the amended complaint does not specifically allege how Officers Ballarta and Rodriguez were involved in the administration of the drill that injured Carty, other than to allege that they developed and maintained policies continuing the drill's use.[2]

Because greater factual specificity in plaintiff's allegations might assist in resolving the qualified immunity issue early in the proceedings, the district court erred in not requiring plaintiff to file a reply under Rule 7(a) before ruling on defendants' motion to dismiss. *See Schultea*, 47 F.3d at 1434 (finding that the district court erred in denying qualified immunity without first requiring the filing of a Rule 7(a) reply when the complaint's allegations were not sufficiently specific); *Reyes*, 168 F.3d at 163 (same). Accordingly, we remand to the district court with instructions that it order plaintiff to file a Rule 7(a) reply in accordance with our opinion in *Schultea*, but do not otherwise cabin its discretion, recognized in *Crawford-El* and *Schultea*, to utilize other techniques in the management of this case. Contrary to our dissenting colleague, we intimate no opinion on whether the plaintiff's reply will sufficiently allege nonconclusory evidentiary facts stating a violation of a constitutional right clearly established or evident at the time of Carty's fatal injury. *See Reyes*, 168 F.3d at 161 (observing that a court "move[s] too quickly" when it decides a

---

[2] Although we hold that the district court should have required plaintiff to plead her allegations with more specificity in a Rule 7(a) reply, we note that "deliberate indifference" is a mental element as to which plaintiff cannot be held to a heightened burden of proof. The Supreme Court in *Crawford-El* approvingly cited then-Judge R.B. Ginsburg's majority opinion in *Martin v. D.C. Metro. Police Dep't*, 812 F.2d 1425 (D.C. Cir. 1987). *See Crawford-El*, 523 U.S. at 599. In *Martin*, the court observed that "[a] government official's motive or purpose is often an essential element of a plaintiff's *prima facie* constitutional claim," and specifically listed the deliberate indifference standard under the Eighth Amendment as an example of such an element. *See Martin*, 812 F.2d at 1433 n.17.

6

qualified immunity issue before requiring the plaintiff to file a reply when "[f]aced with sparse details of claimed wrongdoing by officials").

* * *

For the foregoing reasons, we VACATE the district court's order denying qualified immunity and REMAND for further proceedings consistent with this opinion.[3]

---

[3] We also lift the previous order of a panel of this court, filed December 22, 2006, staying the district court's Docket Control Order and Amended Discovery Order.

OWEN, Circuit Judge, dissenting.

I agree that the district court's order denying official immunity should be vacated. The only question is whether this case should be remanded for further proceedings or judgment should be rendered for the defendants.

Carty was given the opportunity to amend her pleadings in district court and did amend in response to the defendants' motion for an order pursuant to Rule 7(a)(7)[1] requiring Carty to file a reply that provided more specific allegations in response to the answer in which the defendants asserted official immunity. The facts alleged in Carty's amended complaint do not support a claim for a substantive due process violation because the law is not clearly established that state actors engaged in training law enforcement personnel violate the substantive due process provision of the Constitution if they are aware that a training exercise has had a high incidence of injury and continue to employ that method of training. Additionally, any mistake the officers in this case may have made in discerning what the law required in this regard was reasonable in light of the Supreme Court's decision in *Collins v. City of Harker Heights*.[2] Accordingly, I would not remand.

# I

Erwin Ballarta and Albert Rodriguez have been sued in their individual capacities for their conduct as Texas Department of Public Safety employees who train recruits. Carty alleges that these defendants were deliberately indifferent to her husband's right to bodily integrity and life by continuing to conduct active countermeasure drills when the defendants knew that in the past, numerous

---

[1] FED.R.CIV.P. 7(a)(7).

[2] 503 U.S. 115 (1992).

candidates suffered head injuries when participating in this training.[3] Ballarta and Rodriguez are entitled to official immunity if it was not clearly established at the time of the injuries to the decedent Jimmy Carty, Jr. that their conduct was unconstitutional.[4]

It is not clearly established law that a state employer engaged in training employees as peace or police officers violates the due process clause of the Constitution if the training involves risk, even a substantial risk, of serious bodily harm.[5] Nor is it clearly established law that a claim for deliberate indifference that shocks the conscious can be stated when the injured party is an employee and is not in custody or the equivalent of custody.[6]

An allegation that there has been deliberate indifference that resulted in injury will not suffice. The contours of the *constitutional right* must be clear. The Supreme Court has "emphasized . . . 'that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that

---

[3] In her amended complaint, Carty alleges, "[t]he arrest and control tactics drill consists of a fighting exercise, known as active countermeasures. By allowing recruits to punch or kick, the exercise is like common street fighting along with a boxing element. Since 1978, at least 121 DPS recruits have suffered head injuries because of the drill." Carty's amended complaint also describes the drills as "hand-to-hand combat . . . between two DPS officer candidates. The drill was toe-to-toe full force simulation training which involved fighting between the candidates which resulted in numerous head injuries to officer candidates."

[4] *See generally Pearson v. Callahan*, 129 S.Ct. 808, 813 (2009) ("[P]etitioners are entitled to qualified immunity on the ground that it was not clearly established as the time of the search that their conduct was unconstitutional.").

[5] *See Waybright v. Frederick County*, 528 F.3d 199 (4th Cir. 2008); *Feirson v. District of Columbia*, 506 F.3d 1063, 1067 (D.C. Cir. 2007); *Moore v. Guthrie*, 438 F.3d 1036, 1038 (10th Cir. 2006).

[6] *See Collins v. City of Harker Heights*, 503 U.S. 115, 127-28(1992); *but see Eddy v. Virgin Islands Water and Power Authority*, 256 F.3d 204, 213 (3d Cir. 2001).

9

right.'"[7]  In the context of excessive force, the Supreme Court held, "there is no doubt that *Graham v. Connor*[8] . . . clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.  *Yet that is not enough*."[9]

In the present case, it is not enough that it is clearly established that a substantive due process claim based on culpability greater than negligence but falling short of intentional conduct will fail unless there has been deliberate indifference that shocks the conscience.[10]  The "salient question . . . is whether the state of the law in [2005] gave respondents fair warning that their alleged treatment of [Carty] was unconstitutional."[11]  The state of the law did not and does not give "fair and clear warning"[12] that the conduct at issue in this appeal was unlawful.

## II

The Supreme Court's decision in *Collins v. City of Harker Heights*[13] should be our starting point, in light of the facts it considered.  Larry Collins was employed by a city's sanitation department.[14]  He was asphyxiated after entering a manhole in an attempt to unstop a sewer line.[15]  His widow alleged in her suit

---

[7] *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[8] 490 U.S. 386 (1989).

[9] *Saucier*, 533 U.S. at 201-02 (emphasis added).

[10] *See County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998).

[11] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[12] *Id.*

[13] 503 U.S. 115 (1992).

[14] *Id.* at 117.

[15] *Id.*

against the city, brought under 42 U.S.C. § 1983, "that a prior incident had given the city notice of the risks of entering the sewer lines and that the city had systematically and intentionally failed to provide the equipment and training required by a Texas statute."[16]

The Supreme Court said that "[f]airly analyzed," Collins "advances two theories: that the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace, or that the city's 'deliberate indifference' to Collins' safety was arbitrary government action that must 'shock the conscience' of federal judges."[17] The Supreme Court found neither theory sustainable, first explaining, "[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause."[18] The Court further concluded, "'[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.''"[19] The Court observed, "Petitioner's submission that the city violated a federal constitutional obligation to provide its employees with certain minimal levels of safety and security is unprecedented."[20] The Court distinguished cases in which it had held "that apart from the protection against cruel and unusual punishment provided by the Eighth Amendment, the Due Process Clause of its own force requires that

---

[16] *Id.* at 117-18.

[17] *Id.* at 126.

[18] *Id.*

[19] *Id.* (quoting *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 196 (1989)) (alterations in original).

[20] *Id.* at 127.

11

conditions of confinement satisfy certain minimal standards for pretrial detainees."[21]  The Supreme Court pointedly stated, "[t]he 'process' that the Constitution guarantees in connection with any deprivation of liberty thus includes a continuing obligation to satisfy certain minimal custodial standards," and it concluded, "Petitioner cannot maintain, however, that the city deprived Collins of his liberty when it made, and he voluntarily accepted, an offer of employment."[22]

In *Collins*, the Supreme Court further held, "[w]e also are not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."[23]  The Court reasoned that "we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."[24]  This reasoning, the Court said, "applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship."[25]  The Court continued,

> Our refusal to characterize the city's alleged omission in this case as arbitrary in a constitutional sense rests on the presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces.  Decisions concerning the allocation of resources to individual

---

[21] *Id.* (citations omitted).

[22] *Id.* at 127-28.

[23] *Id.* at 128.

[24] *Id.*

[25] *Id.*

12

> programs, such as sewer maintenance, and to particular aspects of those programs, such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country. The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions."[26]

The Supreme Court additionally admonished that the Due Process Clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm."[27]

The training of law enforcement cadets "involve[s] a host of policy choices that must be made by locally elected representatives."[28] The training law enforcement officials receive will almost certainly differ from the training of civilian employees in many respects, including exposure to risks of harm. There are competing considerations in deciding what drills and exercises should be employed in attempting to ensure that law officers are prepared if they are physically attacked or become engaged in an altercation while performing their duties. Neither the Supreme Court nor this court has had occasion to consider whether "ill-advised personnel decisions"[29] in this context violate a constitutional right to life and bodily integrity, and if so, under what circumstances. It simply cannot be said that a constitutional right in this area was clearly established at the time Carty was injured.

---

[26] *Id.* 128-29 (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)) (internal citations omitted).

[27] *Id.* at 129.

[28] *Id.*

[29] *Id.*

Although the Supreme Court did note in *Collins* that the plaintiff had failed to "allege that [her husband's] supervisor instructed him to go into the sewer when the supervisor knew or should have known that there was a significant risk that he would be injured,"[30] the Court did not say what the import would have been if there were such allegations. The defendants in the present case could have reasonably deduced from any one of several passages in the *Collins* decision that requiring cadets to engage in combat with one another as part of their training, even though injuries had previously occurred, did not rise to the level of a constitutional violation. To the extent the defendants were mistaken about the reach of *Collins*, that mistake was reasonable.

I do not suggest that there must be a judicial decision "on all fours" before the law is clearly established for the purposes of official immunity. The Supreme Court observed in *Hope v. Pelzer* that "officials can still be on notice that their conduct violates established law even in novel factual circumstances."[31] But the Supreme Court further explained in *Hope* that the "salient question" "is whether the state of the law [when the act or omission occurred] gave [the officials] fair warning that their alleged treatment of [the plaintiff] was unconstitutional."[32] Fair warning may not exist "when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue."[33] In such cases, "a very high degree of prior factual particularity may be necessary."[34] I respectfully submit that the Supreme Court's decision in *Collins v. City of*

---

[30] *Id.* at 125.

[31] *Id.* at 741.

[32] *Id.*

[33] *Id.* at 740-41.

[34] *Id.* at 741.

14

*Harker Heights*[35] at least left open whether conduct like that at issue in the present case violates the Constitution.

The facts at issue in *Hope* and the Supreme Court's approach in resolving that case are also instructive.[36] Although it was clearly established law that the Eighth Amendment prohibits cruel and unusual punishment, the Supreme Court nevertheless considered precedent in this area in some detail before concluding that the particular practice under consideration violated the Eighth Amendment and that precedent gave the defendants fair warning that their conduct violated the Constitution.[37]

## III

Decisions of the circuit courts reflect, at best, a conflict. Only one, *Eddy v. Virgin Islands Water and Power Authority*,[38] arguably supports Carty's substantive due process claim and denial of official immunity.

In *Eddy,* a public employee was sent to replace a switch on a high-voltage line that was to remain electrified during the procedure.[39] The employee was given an ordinary metal wrench rather than an insulated one and was not given cotton clothing, as required by federal regulations.[40] He was injured when his wrench slipped, passed near an insulator, and an ensuing fireball engulfed him.[41] The Third Circuit noted that the "record was sufficient to show that the defendants knew that Eddy 'would face a risk of almost certain injury if he

[35] 503 U.S. 115 (1992).

[36] 536 U.S. at 733-41.

[37] *Id.* at 737-38, 741-42.

[38] 256 F.3d 204 (3d Cir. 2001).

[39] *Id.* at 207.

[40] *Id.*

[41] *Id.*

performed the work'"[42] and held that this "alleged a violation of a clearly established constitutional right" based on the "'shocks the conscience' standard."[43]

But at least three other circuit court decisions conflict with *Eddy*. In *Moore v. Guthrie*, a police officer lost fifty-seven percent of the vision in one of his eyes when a bullet "flew up beneath his police officer's 'riot helmet' during an intense 'live fire' training exercise with other police officers."[44] Although the chief of police had been told by three different instructors on different occasions that the manufacturer of the cartridges designed for these training exercises required its own face masks and protective head gear to be worn, the chief did not authorize the purchase of the manufacturer's gear.[45] Instead, he authorized the use of riot helmets during the firearms training even though the helmets did not protect the neck or throat and left a gap around the face where a bullet could enter.[46]

Citing the Supreme Court's decision in *Collins v. City of Harker Heights*,[47] the Tenth Circuit held that, as a government employee, "Plaintiff cannot be said to have a [substantive due process] 'right to bodily integrity in a safe work environment.'"[48] That court reasoned, "'[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a

---

[42] *Id.* at 211 n.5.

[43] *Id.* at 213.

[44] 438 F.3d 1036, 1038 (10th Cir. 2006).

[45] *Id.*

[46] *Id.*

[47] 503 U.S. 115, 126 (1992).

[48] *Moore*, 438 F.3d at 1040.

16

substantive component of the Due Process Clause.'"[49] The Tenth Circuit additionally reviewed whether the complained-of conduct shocked the conscience, "out of an abundance of caution,"[50] concluding that it did not.

The Tenth Circuit referred to "three basic principles . . . in evaluating substantive due process claims: (1) the need for restraint in defining [the] scope [of such claims]; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety."[51]  The court explained that [w]hile length of deliberation may be a factor in a conscience-shocking analysis, it cannot replace the over-arching need for deference to local policy-making bodies.  Were this not so and any long-deliberated decision (resulting in a later injury) were called conscience-shocking, substantive due process violations would become a substantial and unnecessary substitute to state tort law."[52]  The Tenth Circuit further concluded that "[a]lthough Plaintiff does not need to find a case with an identical factual situation, he still must show legal authority which makes it 'apparent' that 'in the light of pre-existing law' a reasonable official . . . would have known that having police officers wear riot helmets rather than [the manufacturer's gear] would violate their substantive due process right of bodily integrity."[53]  Because other courts had "declined to find a violation of substantive due process in circumstances similar to, or more shocking than, that alleged by Plaintiff," the

---

[49] *Id.* (quoting *Collins*, 503 U.S. at 126).

[50] *Id.*

[51] *Id.* at 1040-41.

[52] *Id.* at 1041 n.1 (citation omitted).

[53] *Id.* at 1042.

court held that it was not "clearly established" that the defendants violated a constitutional right.[54]

The Fourth Circuit's decision in *Waybright v. Frederick County*[55] also conflicts with *Eddy*. In *Waybright,* a fire department recruit died after participating in rigorous physical exercises conducted outdoors during hot weather.[56] The supervising officer had told the recruits he did not like to hear "I can't" and that he did not like "quitters."[57] The supervisor did not bring water, means of communication, transportation or first-aid equipment to the area where the exercises occurred.[58] "Many of the recruits struggled during the session and some experienced disorientation and pronounced exhaustion."[59] One of the recruits, Waybright, did not receive medical attention when he began to look sick and pale or even after he lost consciousness.[60] He was eventually taken by an ambulance to an emergency room where he died shortly thereafter of heat stroke.[61]

The Fourth Circuit concluded that "the case law as a whole is against a general rule that time to deliberate transforms negligent error into constitutionally shocking conduct."[62] That court also analyzed the Supreme

---

[54] *Id.* at 1043.

[55] 528 F.3d 199 (4th Cir. 2008).

[56] *Id.* at 202.

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.* at 206.

Court's decision in *Collins* as "holding that due process does not require governmental employers to provide a safe workplace, but that state tort law may." The Fourth Circuit further concluded that in the employer/employee contest, *Collins* "necessarily rejected the time to deliberate theory—for employers most often have time to deliberate about workplace conditions."[63] The *Waybright* court reasoned that "[t]he underlying concern in *Collins* was that constitutional law would push state tort law aside whenever a state or local government acted as employer, thus placing 'a host of policy choices that must be made by locally elected representatives' with 'federal judges interpreting the basic charter of Government for an entire country.'"[64] The Fourth Circuit explained that "by finding a state-created danger here, we might well inject federal authority into public school playground incidents, football (or even ballet) practice sessions, and class field trips, *not to mention training sessions for government jobs that require some degree of physical fitness.*"[65] The court continued, "[s]ometimes practice is demanding because games are demanding, and training is demanding because jobs are demanding, and how best to conduct these sessions can rarely be the focus of a constitutional claim."[66] "[T]he displacement of state law with federal policies would be difficult to overstate."[67] The court, therefore, concluded that the conduct at issue did not shock the

---

[63] *Id.*

[64] *Id.* at 208 (citation omitted).

[65] *Id.* (emphasis added).

[66] *Id.*

[67] *Id.*

conscience.[68] "Instruction that seems overzealous, and precautions that seem insufficient, do not reach that level."[69]

The District of Columbia Circuit has held that there was no conscience-shocking behavior when a police officer sustained serious neck and lower back injuries during an "attack exercise" as part of a police training course.[70] The injured officer testified that it was the most serious assault he had ever encountered in over twenty years on the police force, and a training expert testified that the speed, intensity, and force was grossly excessive, without justification, and outside the scope of reasonable and effective training practices.[71] Another expert said that if the plaintiff's description of the facts was true, "then you have misconduct on every officer that was present and all the instructor staff."[72] The District of Columbia Circuit nevertheless held that "even a finding of negligence would be a stretch,"[73] although it did hint that if there had been a higher rate of prior injuries, it might have viewed the case differently.[74]

In sum, there is simply no clear consensus among the circuit courts as to how the substantive due process clause applies to situations in which an officer

---

[68] *Id.*

[69] *Id.* at 209.

[70] *Feirson v. District of Columbia*, 506 F.3d 1063, 1067 (D.C. Cir. 2007).

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *See id.* ("Our conclusion is bolstered by the exercise's extremely low rate of injury. About three months prior to Feirson's injuries, more than 1300 officers had been trained and only seven reported significant injuries. These 'significant' injuries included a broken foot, a knee injury, a broken finger, two instances of bruised ribs, and two instances of dental trauma.").

has been injured during training. In 2005, when Carty was injured and tragically died, the law was not "clearly established." When, as here, "judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy."[75]

We must also bear in mind that the "fair warning" requirement in the qualified immunity standard "is identical" to the degree of notice required in a criminal prosecution.[76] I respectfully submit that the precedent extant when the face-to-face combat drills occurred would not support a criminal prosecution of the officials who are being sued in the present case.

*   *   *

For the foregoing reasons, I respectfully dissent.

---

[75] *Pearson v. Callahan*, No. 07-751, 2009 WL 128768, at *14 (U.S. Jan. 21, 2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999)).

[76] *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (discussing *United States v. Lanier*, 520 U.S. 259, 269 (1997)).