**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 13, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOSE L. HERNANDEZ, as Special
Administrator of the Estates of Jose L.
Hernandez, Jr., deceased, and Salvador
Hernandez, deceased,

        Plaintiff - Appellee,

v.

GARY RIDLEY; TAYLOR
HENDERSON,

        Defendants - Appellants,

DUIT CONSTRUCTION COMPANY
INC.,

        Defendant - Cross-Claimant -
Counter Defendant,

GEORGE RAYMOND; MATTHEW
ROMERO; SHAWN DAVIS; MIGUEL
DOVALINA; ANTHONY ECHELLE;
SHAWNA ROBB; MATTHEW SWIFT,

        Defendants.

v.

ETHEL COOPER,

        Defendant - Cross-Defendant
- Counter-Claimant.

No. 12-6188

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. Nos. 5:10-CV-00915-W & 5:11-CV-01277-W)**

David W. Lee, of Lee Law Center, P.C., (Emily B. Fagan, of Lee Law Center, P.C., and Greg Eldridge, Assistant General Counsel, Oklahoma Dept. of Transportation, with him on the brief), Oklahoma City, Oklahoma, for Defendants – Appellants.

Donald E. Smolen, II, (Laura M. Lauth with him on the brief), of Smolen, Smolen & Roytman, Tulsa, Oklahoma, for Plaintiff – Appellee.

Before **HARTZ**, **McKAY**, and **O'BRIEN**, Circuit Judges.

**O'BRIEN**, Circuit Judge.

Jose Hernandez, Jr., and Salvador Hernandez were killed by a motorist while they were performing road construction in Oklahoma. Their representative sued their employer, Duit Construction Company, and the motorist and alleged a substantive due process claim against a host of Oklahoma Department of Transportation (ODOT) employees. All ODOT employees except the director and the resident engineer on the construction project were dismissed by the district court. The question is whether the two remaining employees are entitled to qualified immunity. The district judge said no. But, because the alleged facts reveal no constitutional violation, we must reverse.

## I. BACKGROUND

The case was decided on a motion to dismiss so we take the facts from the second amended complaint. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir.), *cert. denied*, 2013 WL 3994417 (Oct. 15, 2013). Duit Construction Company was hired by ODOT to serve as the general contractor on a road construction project on Interstate 40 near Yukon, Oklahoma. The Hernandezes—Jose, Jose Jr., and Salvador—worked for Duit. At the time of the accident, Gary Ridley was director of ODOT and Taylor Henderson, an ODOT employee, was the resident engineer overseeing the project. In that capacity, Henderson had "ultimate authority" over the project with respect to implementation of traffic control devices, lane closures and speed reductions, as well as authority to suspend the project if conditions were unsafe for workers. (Appellants' App'x at 25.)

The contract between ODOT and Duit[1] imposed penalties on Duit if it failed to complete the project on time. Another part of the contract required ODOT's approval of traffic control devices used during the project including the erection of barrier walls—concrete barriers placed between the construction project and oncoming traffic. It also called for a nighttime lane closure beginning at 7 P.M.[2] Duit could obtain additional lane

---

[1] The contract is not included in the record on appeal. The second amended complaint contains references to it, which we accept as accurate.

[2] Apparently the contract required the lanes to be open during the day. At oral argument, the parties clarified the lane closure called for under the contract was from 7 P.M. to 7 A.M.

- 3 -

closures by paying a "'lane rental fee' often at the cost of $30,000 an hour." (Appellants' App'x at 27.) ODOT could waive the fee if doing so would benefit Oklahoma citizens.

Prior to the accident, Duit made multiple requests to ODOT to allow additional lane closures to ensure the safety of its workers.[3] One of those requests, made twenty days before the accident, sought a daytime lane closure for thirty days. Henderson denied all requests. Duit also requested the speed limit in the construction area be reduced to 50 mph.[4] That request was also denied.

On June 30, 2010, Duit required the Hernandezes to begin work on the project at 5 P.M. even though the lane where they would be working was not scheduled to be closed with concrete barriers until 7 P.M. While they were working, distracted motorist Ethel Cooper drove off the roadway, running over and killing Jose Jr. and Salvador. After the accident, the Occupational Safety and Health Administration conducted an investigation which included interviews of Duit employees. The employees said ODOT was their "biggest enemy" with respect to construction safety. (Appellants' App'x at 26.)

Jose (hereinafter Hernandez) was appointed personal representative of the estates of Jose Jr. and Salvador. He brought suit against Duit, Cooper, and several ODOT

---

[3] The complaint does not indicate whether the closure requests were accompanied by a request for a fee waiver.

[4] The normal speed limit is not contained in the record but it appears to be between 60 and 70 mph. *See* http://www.okhighways.com/okc/i40.html. In his opening brief, Hernandez says it is 60 mph.

employees. The ODOT employees moved to dismiss the complaint based on qualified immunity and failure to state a claim. The district judge concluded the ODOT employees, with the exception of Ridley and Henderson, were entitled to dismissal because the complaint did not contain specific factual allegations against them; instead the complaint referred generically to "ODOT employees." As to Ridley and Henderson, however, the judge decided the complaint stated a plausible substantive due process violation and neither was entitled to qualified immunity.

## II. DISCUSSION

"Although an order denying a motion to dismiss based on qualified immunity is not a final judgment, this court has jurisdiction under 28 U.S.C. § 1291 to review the order 'to the extent that it turns on an issue of law.'" *Wilson*, 715 F.3d at 852 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). Our review of a rejected motion to dismiss based on qualified immunity is de novo. *Id.* In conducting our review, we "accept[] as true all well-pleaded factual allegations in the complaint and view[] the allegations in the light most favorable to the non-moving party." *Id.*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To resolve qualified immunity claims at the motion to dismiss stage, a court must consider two elements: whether the facts alleged establish a constitutional violation

and whether the violation was "clearly established" at the time of the alleged misconduct. *Id.* at 232. A plaintiff "must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker,* 702 F.3d 573, 579 (10th Cir. 2012).

Ridley and Henderson argue Hernandez has failed to (1) allege sufficient facts showing they plausibly violated Jose Jr. and Salvador's substantive due process rights, and (2) show those rights were clearly established at the time of the violation. Because we agree on the first point, we need not decide the second.[5]

The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. This provision guarantees "more than fair process"; it also covers a "substantive sphere . . ., barring certain government actions regardless of the fairness of the procedures used to

---

[5] Hernandez's complaint alleges supervisory liability against Ridley based on his supervisory authority over Henderson. As we explain, the facts alleged in the second amended complaint, taken as true, do not amount to a substantive due process violation by Henderson. Thus, Hernandez cannot establish a constitutional claim against Ridley. *See Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 920 n.7 (10th Cir. 2012) (collecting cases). In any event, because the claim is easily disposed of, we analyze the allegations against Ridley. *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) ("A plaintiff may . . . succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.").

implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotations omitted).

Normally, "state actors are liable only for their own acts, and not the violent acts of third parties." *Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1260 (10th Cir. 1998). Thus, "a State's failure to protect an individual against private violence . . . does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). "There are, however, two recognized exceptions to this rule. First, state officials may be liable for the acts of private parties when the state has assumed a special relationship with and control over an individual. Second, state officials can be liable for the acts of private parties where those officials created the very danger that caused the harm." *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) (citation omitted). Hernandez argues the second exception—the danger-creation exception—applies here.

To invoke the danger-creation exception, a plaintiff must establish as a threshold matter (1) private violence, and (2) affirmative conduct on the part of the state in placing the plaintiff in danger. *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 920 & n.8 (10th Cir. 2012); *see also Estate of B.I.C.*, 710 F.3d at 1173. He must also satisfy all elements of a six-part test:

> (1) [defendant] created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of

that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003) (quotations omitted).

Hernandez's complaint not only fails to satisfy either threshold element but also fails to adequately allege several elements of the six-part test.

A.  Private Violence

The danger-creation exception requires a private act of violence to have caused the victim's harm. *Gray*, 672 F.3d at 928. Violence requires "*[a]t the very least*" some degree of deliberateness on the part of the private actor; negligence is insufficient. *Id.* at 928-29. Thus, no constitutional violation occurs when a private party's underlying negligent act is directly responsible for the victim's harm. *Id.* at 929-30. Here, Hernandez alleges Jose Jr. and Salvador were killed by Cooper's negligent driving, not by an act of violence. Thus, he has not satisfied the private violence requirement.

B.  Affirmative Conduct Creating the Danger and Placing Jose Jr. and Salvador at Substantial Risk of Serious, Immediate, and Proximate Harm

The affirmative conduct requirement typically involves conduct imposing "an immediate threat of harm, which by its nature has a limited range and duration," and is "directed at a discrete plaintiff rather than the public at large." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002). Inaction by the state is insufficient. *Estate of B.I.C.*, 710 F.3d at 1173. Moreover, under the first and third elements of the six-part test described above, the affirmative conduct must have created the danger to the plaintiff and

have put the plaintiff at substantial risk of serious, immediate, and proximate harm. *Christiansen*, 332 F.3d at 1281.

Hernandez alleges Henderson, as resident engineer, had ultimate authority over the project with respect to implementation of any traffic control devices, lane closures or speed reductions, as well as the authority to suspend the project if conditions were unsafe for workers. He claims Henderson knew Duit was behind on the project and thus subject to possible delay penalties, based on Duit's repeated requests for lane closures and speed reductions. Thus, he says Henderson also knew Duit had a financial incentive to require its employees to work without traffic control measures in place. Nevertheless—and despite the obvious risk faced by Jose Jr. and Salvador if forced to work without such traffic control measures—Henderson repeatedly refused Duit's requests for lane closures and speed reductions, refused to waive the steep lane rental fees called for in the contract, and failed to suspend the project.

Hernandez alleges Ridley, as Director of ODOT, is responsible for adequately training ODOT employees and establishing standard safety procedures to protect construction personnel working on Oklahoma roads. Despite these responsibilities, Hernandez claims Ridley failed to implement any guidelines, policies, regulations or procedures for the protection of highway construction personnel. This lack of guidelines and procedures, according to Hernandez, led to Henderson creating the dangerous conditions causing the deaths of Jose Jr. and Salvador. He further claims Ridley's policies of imposing financial penalties for failure to timely complete construction

projects and charging costly lane rental fees in order to close lanes outside the time period provided by the contract created a financial incentive for Duit to expose its workers to unsafe conditions.

Ridley's alleged failure to promulgate safety standards governing road construction in Oklahoma is not affirmative conduct but rather inaction, which is insufficient. His adoption of general project-management policies (i.e., requiring penalties for falling behind schedule and imposing expensive lane rental fees) also fails to satisfy the affirmative conduct or causation requirements. *See Gray*, 672 F.3d at 926-27. At the time he adopted these policies, Jose Jr. and Salvador were not "identifiable victim[s]." *Id.* at 926. Thus, the policies were not aimed at them directly and "did not pose a threat of immediate and proximate harm" to them; "[r]ather they presented a threat of an indefinite range and duration" to a "broader populace." *See id.* at 926-27 (defendant's policy of assuring patients of 24-hour monitoring but allowing its staff to leave such patients unattended did not constitute affirmative conduct or establish the necessary causation because it was not aimed at plaintiff directly and did not pose a threat of immediate harm to him); *see also Ruiz*, 299 F.3d at 1183 (mere state licensure of daycare facility where child was shaken to death does not constitute affirmative conduct placing child in danger because licensure (1) did not impose an immediate threat of harm but rather a threat of an indefinite range and duration and (2) was not aimed at the child or his mother directly but rather the public at large).

Henderson's alleged conduct is a marginally closer question. On the one hand, Henderson failed to act—he denied Duit's requests for lane closures and speed reductions, failed to grant a waiver of the "lane rental fees," and failed to suspend the project. On the other hand, Henderson took these actions in response to specific requests from Duit. Thus, his conduct is not mere inaction but can be viewed as affirmative conduct. Nevertheless, a more glaring problem exists—Hernandez's failure to allege facts demonstrating it was Ridley and Henderson, as opposed to Duit, whose conduct created the danger putting Jose Jr. and Salvador at substantial risk of serious, immediate, and proximate harm.

According to the complaint, Duit required Jose Jr. and Salvador to work on the project prior to the scheduled lane closure because Duit was behind on the project and thus faced a penalty under the contract. Hernandez does not claim either Henderson or Ridley knew Duit required its employees to work in exposed areas before the scheduled lane closure. While one could infer Henderson's knowledge of Duit's delay predicament (based on his receiving Duit's requests for lane closures) and therefore suppose Duit might try to make up time by exposing its employees to danger, the fact remains it was Duit, not Ridley or Henderson, which chose to endanger Jose Jr. and Salvador for pecuniary gain−to avoid potential contractual penalties. Presumably Duit had other options available; it could have paid the fees for the requested land closures or paid the delay penalties to name but two. Ridley and Henderson's adherence to the performance standards contained in the contract did not force Duit to act recklessly.

C. <u>Shocks the Conscience</u>

Hernandez argues Ridley and Henderson's acts and omissions in this case—which put monetary concerns and the desire to complete the project as quickly as possible before the health and safety of Jose Jr. and Salvador—are "truly conscience shocking." (Appellee's Op. Br. at 11.)  Hyperbole!

"The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quotations omitted).  "Conduct that shocks the judicial conscience . . . is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (quotations omitted).  To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or "employ[ed] it as an instrument of oppression." *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). The behavior complained of must be egregious and outrageous.  *Id*. (substantive due process prohibits "only the most egregious official conduct") (quotations omitted); *see also Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995) ("[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.").

The most that can be said of Ridley and Henderson's conduct is that they held Duit to its contract with ODOT.  We do not find this egregious or outrageous.  Indeed,

- 12 -

Ridley and Henderson's conduct in requiring Duit to perform its duties during the nighttime hours, when traffic is less and conditions are presumably safer—both for the traveling public and road construction workers—is a far cry from conscience-shocking.

Moreover, as we attempt to discern whether alleged conduct is conscience-shocking, we are mindful that "the Due Process Clause 'is not a guarantee against incorrect or ill-advised government decisions.'" *Uhlrig*, 64 F.3d at 573 (quoting *Collins v. City of Harker Heights Tex.*, 503 U.S. 115, 129 (1992)). Indeed, when applying this standard, we "bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Uhlrig*, 64 F.3d at 573 (citations omitted).

The last consideration counsels against extending a substantive due process remedy in this case. By seeking to impose liability on Ridley and Henderson, Hernandez is asking us to be the "Monday morning quarterback" with respect to requiring Duit to perform according to the contract. It is beyond our charge to second-guess "a rational decision making process that takes account of competing social, political, and economic forces." *Moore*, 438 F.3d at 1041. Here, those forces are nearly palpable. At a minimum, consideration must be given to safety of the public and construction crews, project costs, inconvenience to the travelling public, and the need to assure adequate traffic flow during construction. We focus particularly on the last consideration,

adequate traffic flow during construction, because it so dramatically illustrates the need for judicial restraint. The increased dangers of night driving are generally known, as are the increased risks presented as traffic volumes increase, particularly in confined areas. But actually balancing the relative risks and benefits is a challenging task, going well beyond what is generally known or assumed, particularly when even more considerations are in play. A critic's post hoc analysis is no substitute for real time rational decisions.

Finally, according to Hernandez, the time Ridley and Henderson had to reflect on their decisions makes their conduct conscience-shocking. While length of deliberation is a factor in a conscience-shocking analysis, *see, e.g., Lewis*, 523 U.S. at 853; *Radecki v. Barela*, 146 F.3d 1227, 1232 (10th Cir. 1998), "it cannot replace the over-arching need for deference to local policy-making bodies." *Moore*, 438 F.3d at 1041 n.1. "Were this not so and any long-deliberated decision (resulting in a later injury) were called conscience-shocking, substantive due process violations would become a substantial and unnecessary substitute to state tort law."[6] *Id.*

**REVERSED.**

---

[6] Although Ridley and Henderson were not Jose Jr. and Salvador's direct employers, Hernandez's allegations are akin to claims made against government employers alleging a right to work in a reasonably safe environment. But the Supreme Court has declined to extend substantive due process protection to safe working conditions. *See Collins v. City of Harker Heights Tex.*, 503 U.S. 115, 126 (1992) ("Neither the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause.").