**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 6, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CATRICE THOMAS, as the surviving
biological daughter and surviving heir of
the decedent, Martel C. Thomas; ESTATE
OF MARTEL THOMAS,

     Plaintiffs - Appellants,

v.

YOLANDA WHITE-GORDON,
individually and as a current or former
employee or authorized agent of the City &
County of Denver Pretrial Services,

     Defendant - Appellee.

No. 16-1042
(D.C. No. 1:15-CV-00906-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **PHILLIPS**, Circuit Judges.
_____

    Martel Thomas (Decedent) was shot and killed in his home by an intruder who

was supposed to be under the intensive supervision of Denver Pretrial Services

(DPS). His daughter, Catrice Thomas, and his estate (Plaintiffs) appeal the district

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

court's[1] dismissal of their claims against Yolanda White-Gordon (Defendant), a DPS employee, in their second amended complaint (the Complaint). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

We assume the truth of the following facts alleged in the Complaint. *See Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013). Decedent was murdered by Kenneth Mackey, who was out on bond on an unrelated attempted-murder charge. Under the terms of Mackey's court-ordered pretrial release, he was under intensive supervision by DPS. Defendant was the DPS employee primarily designated to monitor Mackey and implement the terms and conditions of his pretrial release. Although Mackey had a GPS device attached to his person and was supposed to be subject to drug-testing and other monitoring, he violated numerous bond conditions, obtained a firearm, and broke into Decedent's home, where he shot and killed Decedent. He eventually was apprehended by tracking his GPS device.

According to Plaintiffs, Defendant was responsible for protecting the public, Mackey posed a foreseeable risk of recidivism, and Defendant's failure to enforce his bond conditions proximately caused or substantially contributed to Decedent's death. The Complaint claims that Defendant is liable under 42 U.S.C. § 1983 for violating Decedent's due-process rights, and is also liable under Colorado law for injuries to Plaintiffs.

---

[1] The parties consented to proceed before a magistrate judge under 28 U.S.C. § 636(c).

2

The district court granted Defendant's motion to dismiss the Complaint. It ruled (1) that to the extent the Complaint alleged state-law claims against Defendant in her official capacity, those claims were barred by sovereign immunity under Colorado law; (2) that the allegations under § 1983, which appeared to raise a substantive-due-process claim, failed to plausibly allege a constitutional violation; and (3) that it would decline to exercise supplemental jurisdiction over the individual-capacity state-law claims, which it remanded to state court. We turn to the three rulings.

First, Plaintiffs do not contest that their state-law official-capacity claims are barred by sovereign immunity. Rather, they contend that the district court remanded the state-law official-capacity claims to state court. But the record demonstrates otherwise. The conclusion of the court's dismissal order states:

> Plaintiffs' official-capacity state law claims . . . are **dismissed** against Defendant. Plaintiffs' remaining wrongful death and survival claims against Defendant in her individual capacity are **remanded** to [state court] . . . .

Aplt. App., Vol. 1 at 38.

Second, the district court properly dismissed the § 1983 claims against Defendant. Plaintiffs do not press an official-capacity claim; and as we proceed to explain, the claim against Defendant in her individual capacity was properly dismissed under the doctrine of qualified immunity.

We review de novo the district court's dismissal based on qualified immunity. *See Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010). At this stage of the

3

proceedings, we accept as true all well-pleaded factual allegations and ask whether they state a plausible claim for relief. *See Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014).[2] "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1194 (internal quotation marks omitted). To overcome a qualified-immunity defense, a plaintiff "bears a heavy two-part burden" to show that the defendants violated a constitutional or statutory right and that the right was clearly established. *Id.* (internal quotation marks omitted). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (internal quotation marks omitted), *petition for cert. filed* (U.S. Nov. 10, 2016) (No. 16-643). Typically, there must be "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* at 965 (internal quotation marks omitted).

The Supreme Court has strictly limited substantive-due-process claims. Although "[t]he Fourteenth Amendment prohibits a State from depriving 'any person of life, liberty, or property without due process of law,'" *Hernandez v. Ridley*,

---

[2] Plaintiffs contend that the district court converted Defendant's motion to dismiss into a motion for summary judgment because it considered matters outside the Complaint. But the court expressly excluded outside material and applied the proper plausibility standard.

734 F.3d 1254, 1258 (10th Cir. 2013) (quoting U.S. Const. amend. XIV, § 1),

"nothing in the language of the Due Process Clause itself requires the State to protect

the life, liberty, and property of its citizens against invasion by private actors,"

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

Generally, state actors are not liable for failing to protect individuals from private

acts of violence. *See id.* at 197; *Hernandez*, 734 F.3d at 1258. This court, however,

has recognized two exceptions to this rule: (1) the special-relationship exception and

(2) the danger-creation exception. *See Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173

(10th Cir. 2013). We address both.

"The special relationship doctrine applies when the state assumes control over

an individual sufficient to trigger an affirmative duty to provide protection to that

individual." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (internal

quotation marks omitted). If "the State by the affirmative exercise of its power so

restrains an individual's liberty that it renders him unable to care for himself," then

"the Constitution imposes upon [the State] a corresponding duty to assume some

responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 200.

This "affirmative duty to protect arises not from the State's knowledge of the

individual's predicament or from its expressions of intent to help him, but from the

limitation which it has imposed on his freedom to act on his own behalf." *Id.*

Plaintiffs contend that Defendant had a special relationship with Decedent

because she had a duty to protect the public at large, which included Decedent, from

Mackey. But she does not allege that Decedent was in custody or under some similar

5

restraint that prevented him from caring for himself. Although Plaintiffs contend that Mackey's proclivity for violence was known and foreseeable, "foreseeability cannot create an affirmative duty to protect when plaintiff remains unable to allege a custodial relationship," *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 994 (10th Cir. 1994). The predicate for a special-relationship claim is wholly absent here. Plaintiffs cite no clearly established law supporting their special-relationship claim.

Nor is there the basis for a danger-creation claim. Such a claim has two preconditions: that the state actor take affirmative action and that her action result in private violence injuring the plaintiff. *See Estate of Reat*, 824 F.3d at 965. If these two preconditions exist, a plaintiff must also satisfy a six-factor test, demonstrating:

> (1) the charged state actor created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Id.* (ellipsis, brackets, and internal quotation marks omitted).

Plaintiffs' danger-creation theory falters on the first precondition because the Complaint does not allege that Defendant took affirmative action. Rather, it alleges that she failed to take action to enforce Mackey's bond conditions. And "mere negligence or inaction is not enough" to demonstrate "affirmative conduct on the part of the state in placing [Decedent] in danger." *Estate of B.I.C.*, 710 F.3d at 1173 (internal quotation marks omitted). Also, the second factor is absent. Plaintiffs

6

allege Decedent was a member of the general public, not "a member of a limited and specifically definable group," *Estate of Reat*, 824 F.3d at 965 (internal quotation marks omitted); *see Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) ("[T]he conduct should be directed at a discrete plaintiff rather than at the public at large."). The Complaint does not allege a danger-creation claim.

Given this precedent, it is not surprising that Plaintiffs have failed to cite any authority, much less clearly established law, supporting a danger-creation theory under these circumstances. Their reply brief, which addresses the argument too late, *see Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief."), cites a single Tenth Circuit case, *Seamons v. Snow*, 84 F.3d 1226, 1230 (10th Cir. 1996), which actually rejected substantive-due-process claims. Anything in that opinion supporting substantive-due-process claims would have to be dicta, hardly the basis for clearly established law.

The district court's third ruling was its remand of the individual-capacity state-law claims to the state court. *See* 28 U.S.C. § 1367(c)(3). The district court declined to exercise supplemental jurisdiction over these claims because the federal claims had been dismissed and the surviving state-law claims required the interpretation of state statutory law. Plaintiffs do not contest this ruling, so we need not consider its merits.

7

The judgment of the district court is affirmed.

Entered for the Court

Harris L Hartz
Circuit Judge