TYMKOVICH, Chief Judge, dissenting.
This case presents a classic variation on the theme that "bad facts make bad law." The experiences alleged by Mr. Colbruno, if inflicted with malice, would trouble anyone. If, on the other hand, deputies sought only to make the best of a bad situation in obtaining emergency medical care for him, few would be alarmed.
In my view, Mr. Colbruno has not adequately alleged malicious conduct. Applying the appropriate legal framework under the Fourteenth Amendment, the deputies should therefore be entitled to qualified immunity. As the majority explains, Mr. Colbruno must allege some violation of a clearly established constitutional right. But the complaint fails to allege facts sufficient to state a claim for substantive due process under the Fourteenth Amendment, let alone one that was clearly established at the time of the events in question.
I begin by reiterating the appropriate legal framework for a complaint like this one, which alleges official misconduct. I then contrast this approach with the framework adopted by the majority. Ultimately, I conclude that-when either standard is faithfully applied-Mr. Colbruno has failed to allege a violation that was clearly established.
A. Fourteenth Amendment Violation
The majority is correct in concluding these allegations are best analyzed under the Fourteenth Amendment's provision for due process. But I believe the majority has applied the wrong due-process framework.
*1167 1. The Appropriate Framework
The Supreme Court has read the Fourteenth Amendment to authorize challenges to abusive or arbitrary governmental conduct through claims of substantive due process . E.g., Cty. Of Sacramento v. Lewis , 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Governmental conduct may prove sufficiently abusive or arbitrary so as to violate substantive due process in one of two ways-from (1) legislative acts that infringe upon a personal right without sufficient justification, or (2) official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience. E.g., United States v. Salerno , 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (" '[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.' ") (citations omitted).
These allegations do not involve legislative action, so they must be evaluated under the cases that consider official conduct. See Lewis , 523 U.S. at 846-47, 118 S.Ct. 1708 ; see also Browder v. City of Albuquerque , 787 F.3d 1076, 1079 n.1 (10th Cir. 2015). These cases emphasize that "only the most egregious official conduct can be said to be 'arbitrary' in the constitutional sense." Onyx Props. LLC v. Bd. of Cty. Commr's of Elbert Cty. , 838 F.3d 1039, 1048-49 (10th Cir. 2016). In evaluating allegations of official misconduct, we apply the "shocks the conscience" standard.[1]
Conduct "shocks the conscience" when it demonstrates such "a degree of outrageousness and a magnitude of potential or actual harm" that it "shocks the conscience of federal judges." Uhlrig v. Harder , 64 F.3d 567, 573-74 (10th Cir. 1995) (quoting Collins v. City of Harker Heights , 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ) (internal quotation marks omitted); see also Halley v. Huckaby , 902 F.3d 1136, 1155 (10th Cir. 2018) ("Conduct that shocks the judicial conscience is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice.") (quoting Hernandez v. Ridley , 734 F.3d 1254, 1261 (10th Cir. 2013) ) (internal quotation marks omitted).
This standard is exacting, in large part because the complete universe of state-law torts might otherwise then be distorted into constitutional violations of due process. Dawson v. Bd. of Cty. Commr's of Jefferson Cty. , 732 F. App'x 624, 634 (10th Cir. 2018) (Tymkovich, C.J., concurring), cert. denied --- U.S. ----, 139 S. Ct. 862, 202 L.Ed.2d 569 (2019). We have therefore observed that only the most genuinely egregious abuse or misuse of governmental power will be sufficient to clear the burden required to shock the judicial conscience. E.g., Lindsey v. Hyler , 918 F.3d 1109, 1116 (10th Cir. 2019).
This complaint cannot clear such a high standard. Mr. Colbruno alleges the deputies moved him from the ambulance bay to his hospital room without clothing or otherwise covering his body. This contention supports an inference of indifference or callousness, but no more. Mr. Colbruno does not allege any intent to humiliate or punish lay behind this decision. Nor does he contend the deputies prolonged his exposure to potential onlookers, either through needless delay or circuitous travel through the hospital. Nor, lastly, does he allege that anyone beyond hospital personnel witnessed any of these events. All of *1168 which presumably transpired within seconds.
In short, as the complaint now stands, we know the deputies were responding to a medical emergency; we know Mr. Colbruno-after ingesting metal objects in the midst of a psychotic episode-had soiled himself while in transit from pretrial detention to the hospital; and we know the deputies decided to rush him into the emergency room, unclothed. We do not know why they made the decisions they did; we do not know whether a suitable gown was readily available; and we do not know whether time was really of the essence. Perhaps further investigation prior to filing this lawsuit would have shed light upon some of these missing facts. Taken together, the answers to the questions could very well allow for a permissible inference of conscience-shocking conduct.[2]
But in the absence of such additional factual context, I would conclude the complaint fails to allege the requisite inference of malice that is necessary to conclude the deputies might have engaged in conduct that shocks the conscience. In sum, Mr. Colbruno has not adequately alleged a violation of his constitutional rights to substantive due process under the Fourteenth Amendment.
2. The Majority Framework
Given the limitations of the complaint, the majority acknowledges difficulty in identifying which constitutional provision should entitle Mr. Colbruno to relief. He alleged violations of both his Fourth Amendment right to be free of unreasonable searches and his Fourteenth Amendment right to bodily integrity. The district court, in turn, accepted the Fourth Amendment rationale and did not conduct an independent analysis of the Fourteenth Amendment claim. But because Mr. Colbruno was neither searched nor seized in any conventional sense, it is obvious-as explained above-that any relief must stem from the Fourteenth Amendment's protections against official misconduct; and not the Fourth Amendment's familiar assurances against unreasonable search or seizure.
The majority understandably turns to a line of cases involving the rights of pre-trial detainees. Relying upon Bell v. Wolfish , 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and Kingsley v. Hendrickson , --- U.S. ----, 135 S. Ct. 2466, 192 L.Ed.2d 416 (2015),[3] the majority concludes "[a] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Maj. Op. 1162. (emphasis in original) (quoting Bell , 441 U.S. at 535, 99 S.Ct. 1861 ). In Bell , the Supreme Court explained that-when a person is confined while awaiting trial-the government must respect the presumption of his innocence. Accordingly, only those restraints against liberty that advance legitimate institutional interests will be constitutionally permissible. But "if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental *1169 action is punishment that may not constitutionally be inflicted upon detainees qua detainees." Id . at 539, 99 S.Ct. 1861.
The majority also points to a case not briefed by either party to apply the principles outlined in Bell . Relying on Blackmon v. Sutton , 734 F.3d 1237 (10th Cir. 2013), the majority concludes Mr. Colbruno's treatment as detailed in his complaint was tantamount to punishment. In Blackmon , we concluded that a juvenile detainee who claimed repeated punishment through sometimes-lengthy placement in a restraint chair had successfully alleged a violation of his due-process rights under the Fourteenth Amendment.
But a close reading of Blackmon offers little support for the majority's application here. The Blackmon panel concluded the plaintiff's allegations were so egregious that they would have cleared the more demanding hurdle of stating an Eighth Amendment violation. It therefore followed necessarily that the plaintiff had made out a violation of his substantive due process rights under the Fourteenth Amendment, since "a pretrial detainee enjoys at least the same constitutional protections as a convicted criminal." Id . at 1241-42, 1242-43. In other words, the circumstances alleged by the plaintiff proved so egregious that the test from Bell was beside the point.
It bears mentioning, as well, that Blackmon arose during a period of uncertainty surrounding the propriety of applying the shocks-the-conscience standard as the sole test for official misconduct. See Dias v. City and Cty. of Denver , 567 F.3d 1169, 1182 (10th Cir. 2009) ("We held ... that application of a 'shocks the conscience' standard in cases involving executive action is not to the exclusion of the foregoing ['rights'] framework."). But any residual uncertainty has since been foreclosed by Browder v. City of Albuquerque , 787 F.3d at 1079 n.1 (10th Cir. 2015) (Gorsuch, J.) ("[T]he 'arbitrary or conscience shocking' test is the appropriate one for executive action."); accord Dawson , 732 F. App'x at 636 (Tymkovich, C.J., concurring) ("If a claim challenges executive action, we apply only the 'shocks the conscience' test.") (emphasis added).
But even if Blackmon represented a correct and straightforward application of Bell , there exist myriad factual differences between the circumstances detailed in Blackmon and the allegations in this case. In Blackmon , for instance, the plaintiff's lawsuit arose specifically from the conditions of his confinement. Here, by contrast, Mr. Colbruno never alleges his treatment arose as a condition of his confinement. And whereas Blackmon entailed repeated and systematic punishment within the confines of a detention facility, Mr. Colbruno details what would be a single constitutional violation separate and apart from the place of his confinement.
Finally-perhaps because Blackmon offers so few analogous facts-the majority turns to several Fourth Amendment strip-search cases. It asserts "the conclusion [that deputies'] alleged conduct constituted a violation of the Fourteenth Amendment readily follows" from these cases. Maj. Op. 1164. But violations of the Fourth Amendment are evaluated only for reasonableness. See, e.g., Lewis , 523 U.S. at 842-43, 118 S.Ct. 1708 (noting the difference between the Fourth Amendment's "reasonableness" standard and the Fourteenth Amendment's shocks-the-conscience standard). The Fourth Amendment accordingly provides no support for a due-process claim involving official misconduct of the type alleged here.
B. Clearly Established Violation
No matter how we analyze his claims, Mr. Colbruno has failed to allege the violation of a clearly established constitutional *1170 right. The Supreme Court has explained that "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." E.g., Mullenix v. Luna , --- U.S. ----, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (citations and quotation marks omitted).
Although we need not "require a case directly on point," it is nonetheless the case that "existing precedent must have placed the statutory or constitutional question beyond debate." Id . (citations and quotation marks omitted). This is because qualified immunity is meant to "protect[ ] all but the plainly incompetent or those who knowingly violate the law." Id . (citations and quotation marks omitted). The Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality." Id . (citations and quotation marks omitted). And the Court has likewise emphasized "[t]he dispositive question is whether the violative nature of particular conduct is clearly established." Id . (citations and quotation marks omitted) (emphasis in original). Such an inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id . (citations and quotation marks omitted) (emphasis added). The Court has also observed that-in the related Fourth Amendment context-"specificity is especially important," as "it is sometimes difficult ... to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts." Id . (citations and quotation marks omitted).
The violation proposed by the majority-of a right to be free from "a restriction or condition ... not reasonably related to a legitimate goal" Maj. Op. 1165-is far too broad. While I am certainly sympathetic to the privacy interests asserted by Mr. Colbruno, no precedential case has clearly established a constitutional violation at the appropriate level of specificity under the facts alleged here.
To avoid this conclusion, the majority asserts the deputies' violation of Mr. Colbruno's rights was so obvious that we need not point to a closely aligned case. It is, of course, correct that some "constitutional violation[s] may be so obvious that similar conduct seldom arises in our cases," such that "it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare attempt." Lowe v. Raemisch , 864 F.3d 1205, 1210-11 (10th Cir. 2017) (citations and quotation marks omitted). But this exception is exceedingly narrow, as we must effectively conclude "our precedents render the legality of the conduct undebatable." See id . at 1211 (citing Aldaba v. Pickens , 844 F.3d 870, 877 (10th Cir. 2016) ).
In its effort to clear this hurdle, the majority again looks to Blackmon . But the circumstances depicted there could not credibly alert the deputies of misconduct, absent some punitive intent. Whereas punishment sat at the center of the dispute in Blackmon , Mr. Colbruno has not alleged facts that would suggest the deputies intended to punish him; or, for that matter, any other state of mind that would meet the constitutional standard for egregiousness. And whereas at least one official in Blackmon engaged in repeated, systematic, and gratuitous misconduct, Mr. Colbruno details what would be-at most-a single discrete incident that lasted only for a matter of moments.
In sum, absent plausible allegations of intentional and abusive misconduct, clearly-established law could not have alerted the deputies they were violating Mr. Colbruno's right to substantive due process. As troubling as these allegations-if true-would be, the complaint fails to tie *1171 the invasion of Mr. Colbruno's privacy to the constitutional requirement for intent.

See Nathan S. Chapman & Michael W. McConnell, Due Process as Separation of Powers , 121 Yale L.J. 1672, 1788 (2012) (explaining Lewis 's holding "that substantive due process claims against the executive-usually law enforcement officers-are governed by a 'shocks the conscience' test").

Mr. Colbruno was likewise obligated to plead specific facts that plausibly allege a constitutional violation as to each defendant . See, e.g., Ashcroft v. Iqbal , 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). He did not do so. The complaint alleges only that Officer Petit, as ranking officer, made the decision to remove Mr. Colbruno from the van without a smock.

Because Kingsley was decided after the events alleged in the complaint, Bell remains the applicable Supreme Court precedent. Kingsley likewise addressed the state-of-mind requirement for an excessive-force claim brought under the Fourteenth Amendment. Because the complaint does not allege excessive force, the relevance of Kingsley -beyond its restatement of the general principles articulated in Bell -is not obvious.